IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| BROWN & ASSOCIATES, LTD., | ) | |
| | ) | CASE NO. BK08-83078-TJM |
| Debtor(s). | ) | A09-8003-TJM |
| BROWN & ASSOCIATES, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | CH. 11 |
| | ) | |
| vs. | ) | |
| | ) | |
| POSITIVE PROPERTY MANAGEMENT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

This matter is before the court on the defendant's motion for summary judgment (Fil. #15) and resistance by the plaintiff-debtor (Fil. #43). Charles O. Forrest and Howard T. Duncan represent the debtor, and Michael R. Peterson, Bradley D. Shidler, and Edward D. Hotz represent the defendant. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

This adversary proceeding concerns competing allegations of the breach of a lease of business premises. The defendant, Positive Property Management, L.L.C. ("PPM"), leased premises to an entity called Maple, Inc. The debtor, Brown & Associates, Ltd. ("Brown"), guaranteed the lease. The lease contained a clause prohibiting the lessor from permitting the use of any part of the leased premises for a business similar to that conducted by Maple, Inc. Maple subsequently gave notice to PPM that it was terminating the lease and vacating the premises due to PPM's alleged violation of that restrictive-use clause. PPM filed a breach of contract action in Douglas County District Court. Maple and Brown answered and alleged that PPM breached the lease. Shortly before the trial, Brown filed its Chapter 11 bankruptcy case and removed the state court litigation to this court. Some $75,000 in damages are at issue.

PPM filed this motion for summary judgment, arguing that it did not commit a material breach entitling Maple to terminate the lease, and even if it did breach the lease, Maple acquiesced to the conduct and therefore waived its right to declare a breach.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The court must examine the record to ascertain whether the movant, through depositions, answers to interrogatories, admissions, affidavits, and other evidence, has demonstrated the absence of a genuine issue of material fact. Beard v. Banks, 548 U.S. 521, 529 (2006). If the movant has done so, then the non-moving party, bearing the burden of persuasion, must by affidavit or otherwise, set forth specific facts showing that there is a genuine issue for trial. Id. The court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue. Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. Co., 536 F.3d 939, 943-44 (8th Cir. 2008). An issue is genuine if it has a real basis in the record, and a genuine issue of fact is material if it might affect the outcome of the suit. Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record, without resorting to speculation. Hitt v. Harsco Corp., 356 F.3d 920, 923-34 (8th Cir. 2004).

The following facts are not in dispute:

1. PPM is a Nebraska partnership duly organized and existing in Nebraska.

2. Brown is a Nebraska corporation authorized to do business in Nebraska.

3. Maple, Inc., d/b/a Sparks Computerized Car Care, is a Nebraska corporation authorized to do business in Nebraska. Brown is the principal shareholder of Maple.

4. PPM and Maple entered into a business property lease for Maple's lease of premises at 8823 Maple Street in Omaha, Nebraska, on July 18, 1989, for a term of five years, with options for two five-year renewals. Brown, as Maple's principal shareholder, and Brown's three shareholders guaranteed the performance of all covenants of the lease by Maple, including payment of rent.

5. On or about February 23, 2000, PPM and Maple entered into a business property lease providing for Maple's lease of premises at 8815 Maple Street in Omaha, Nebraska. Brown, as Maple's principal shareholder, guaranteed the performance of all covenants of the lease by Maple, including payment of rent. This was a new lease between the parties for what was in essence a third renewal of the original lease, because the original lease did not provide for more than two renewals.

6. Maple leased the premises at 8815 Maple Street for the operation of Sparks Computerized Car Care Center, an automobile service and repair business.

7. The term of the lease was five years, having commenced on December 1, 1999, with annual rental due in equal monthly installments according to the following schedule:

| | | |
|---|---|---|
| First year: | $36,900.00 annually | $3,075.00 monthly |
| Second year: | $37,980.00 annually | $3,165.00 monthly |
| Third year: | $39,120.00 annually | $3,260.00 monthly |
| Fourth year: | $40,260.00 annually | $3,355.00 monthly |
| Fifth year: | $41,460.00 annually | $3,455.00 monthly |

8. In addition to rent, the lease required Maple to pay any increase in the amount of real estate taxes over and above the prior year's taxes, common area maintenance, utility charges, and general repair and maintenance on the premises.

9. Under the lease, PPM agreed not to use, suffer, permit or consent to the operation of an auto service and repair business similar to that conducted by Maple on the premises during the lease term.

10. Maple and PPM entered into similar business lease agreements the preceding ten years.

11. PPM maintained a business on the subject premises, known as Sports & Imports Auto Sales, since 1990. Automotive repair work constituted a portion of that entity's business.

12. On October 17, 2002, PPM received a notice from Maple alleging that PPM was in violation of the lease for allowing part of the leased premises to be used as an auto service and repair business similar to Maple's business.

13. On November 6, 2002, PPM received subsequent notice from Maple that it was terminating the lease and vacating the premises, effective November 4, 2002, as a result of an alleged breach due to PPM's operation of the Sports & Imports Auto Sales business on the subject premises.

14. The last rental payment made by Brown was in October 2002 in the amount of $3,355.00.

15. PPM leased the premises to new tenants from March 2004 to June 2004, and September 2004 to October 2004.

16. On April 12, 2004, PPM filed a lawsuit against Maple in Douglas County District Court alleging breach of the lease terms.

17. On November 26, 2008, Brown filed its Chapter 11 bankruptcy petition.

To recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty. Solar Motors, Inc. v. First Nat'l Bank of Chadron, 545 N.W.2d 714, 721 (Neb. 1996). The parties here do not dispute the existence and validity of the lease agreement. The question is whether either or both of the parties breached the lease and, if so, what the appropriate amount of damages is.

Nebraska law on the interpretation of contracts is well established:

> A lease agreement is to be construed as any other contract. Bedrosky v. Hiner, 230 Neb. 200, 430 N.W.2d 535 (1988). In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. Daehnke v. Nebraska Dept. of Soc. Servs., 251 Neb. 298, 557 N.W.2d 17 (1996); C.S.B. Co. v. Isham, 249 Neb. 66, 541 N.W.2d 392 (1996). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. Daehnke v. Nebraska Dept. of Soc. Servs., supra; Winfield v. CIGNA Cos., 248 Neb. 24, 532 N.W.2d 284 (1995). The determination of whether a contract is ambiguous is to be made on an objective basis, not by the subjective contentions of the parties suggesting opposing meanings of the disputed language. Daehnke v. Nebraska Dept. of Soc. Servs., supra; Murphy v. City of Lincoln, 245 Neb. 707, 515 N.W.2d 413 (1994). The terms of a contract are to be accorded their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them. Daehnke v. Nebraska Dept. of Soc. Servs., supra; Murphy v. City of Lincoln, supra.

Johnson Lakes Dev., Inc. v. Cent. Neb. Pub. Power & Irrigation Dist., 576 N.W.2d 806, 814 (Neb. 1998).

Neither party is arguing that the lease in general or the restrictive-use clause in particular is ambiguous. The only issue is whether the actions of either party – PPM in servicing vehicles and Maple in terminating the lease – constituted a breach of the lease.

A minor breach of contract is compensable in damages, but a material breach – such as violation of a non-compete agreement – will excuse the non-breaching party from performance. Gary's Impl., Inc. v. Bridgeport Tractor Parts, Inc., 702 N.W.2d 355, 370, 371 (Neb. 2005). "Whether or not a breach is material and important is a question of degree which must be answered by weighing the consequences of the breach in light of the actual custom of persons in the performance of contracts similar to the one involved in the specific case." Phipps v. Skyview Farms, Inc., 610 N.W.2d 723, 730-31 (Neb. 2000).

The question of whether a breach is material is ordinarily a question of fact, but when the facts giving rise to the breach are undisputed, the court may decide the issue as a matter of law. Watts v. Butte Sch. Dist. No. 5, 939 F. Supp. 1418, 1428-29 (D. Neb. 1996).

In this case, the facts are disputed, in that while PPM admits it performed automotive repairs on its property, the scope of the work and whether it rises to the level of a material breach of the terms of the lease is in dispute. PPM maintains that it did a limited amount of work on vehicles it sold and rented and on vehicles owned by friends. In 1999, the repair work amounted to nearly $44,000 in income, while in 2002 it constituted about $12,000 in income. In relative terms, the proportion of Sports & Imports' income attributable to automobile service was 10.8% in 1999, 4.5% in 2000, 3.5% in 2001, and 2.5% in 2002. Whether that is legally material is a matter for the fact-finder to decide.

Moreover, PPM argues that Maple and Brown knew of and acquiesced in the repair work conducted by Sports & Imports. A party with knowledge of a breach cannot accept the benefits of a contract while claiming that the breach terminates its responsibilities under the contract. Randall v. Erdman, 231 N.W.2d 689, 692 (Neb. 1975).

The owner of Brown and Maple discussed the restrictive-use clause with PPM's president when the 2000 lease was being negotiated, and he asserts he was assured at that time that Sports & Imports was not engaged in a competing business because Sports & Imports' service work was limited to vehicles it rented or sold. This establishes that Maple and Brown knew PPM was permitting auto repair work to occur in proximity to the Sparks business, and Maple and Brown consented to such activity, but whether such knowledge equates to acquiescence to the alleged breach is a factual determination.

Because of the existing factual disputes, summary judgment is not warranted at this time.

IT IS ORDERED: The defendant's motion for summary judgment (Fil. #15) is denied.

DATED: December 10, 2009

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
- Charles O. Forrest
- Howard T. Duncan
- Michael R. Peterson
- Bradley D. Shidler
- Edward D. Hotz
- U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.