IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK08-83078-TJM |
| ) | |
| BROWN & ASSOCIATES, LTD., ) | CH. 11 |
| ) | |
| Debtor(s). ) | |
| BROWN & ASSOCIATES, LTD., ) | |
| ) | ADV. NO. 09-8003-TJM |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| POSITIVE PROPERTY MANAGEMENT, ) | |
| LLC, ) | |
| ) | |
| Defendant. ) | |

ORDER

Trial was held in Omaha, Nebraska, on February 23, 2010, regarding Filing #1, Notice of Removal, filed by Brown & Associates, Ltd. Charles Forrest appeared for Brown & Associates, Ltd., and Michael Peterson appeared for Positive Property Management, LLC.

Background, Facts, and Discussion

At Filing #63 an order was entered denying a motion for summary judgment filed by the defendants. That order contains a general description of the issue and the background of this case.

The parties entered into a lease of improved real property in 1989. Positive Property Management, LLC ("PPM"), is the owner of the improved property. A corporation owned by Brown & Associates, Ltd. ("Brown"), Maple, Inc., d/b/a Sparks Computerized Car Care, was the tenant under the original lease from 1989 through 1999, and, on a subsequent lease from December 1999 through the time Maple, Inc., notified the landlord of a termination of the lease based upon an alleged breach of the lease by the landlord in November of 2002. Brown is a guarantor of the lease.

PPM eventually sued Maple, Inc., and Brown in Douglas County District Court for damages resulting from an alleged breach of the lease, the termination by Maple, Inc. Brown then filed this Chapter 11 case and removed the state court action to the bankruptcy court.

Both leases have identical language concerning a restriction on the type of business that the landlord may permit in the business center which the landlord owns and which is adjacent to the property being used by Maple, Inc. The Maple, Inc., property is identified as 8815 Maple Street, Omaha, Nebraska. The adjacent property includes a number of bays which businesses may rent, and has always included a business called "Sports & Imports Auto Sales" which is a used car sales lot and rental lot. Mr. Bristol, the owner of PPM, is also the owner of Bristol, Inc., d/b/a Sports & Imports. Mr. Bristol executed the lease in question on behalf of PPM.

The lease in question, Filing #21, under the "USE" paragraph includes the following: "The landlord shall not use, suffer, permit or consent to the use or occupancy of any part of the

developed area for an auto service and repair business similar to that conducted on the Premises by the Tenant."

Although the phrase "developed area" is not defined in the lease, the parties agree that it includes the property leased to Maple, Inc., and the remainder of the property used by Bristol, Inc., d/b/a Sports & Imports, and the remaining building spaces and real property adjacent to 8815 Maple Street that is controlled by Mr. Bristol or one of his corporations.

The dispute concerns the lease language quoted above. That language was in the original 1989 lease and when the parties were in negotiations about the lease which appears at Filing #21, Mr. Bristol sent a draft to Mr. Stern, the president of Maple, Inc., without that restrictive language included. Prior to the negotiations even beginning, Mr. Stern had contacted Mr. Bristol in writing, Filing #22, that Mr. Stern believed that Mr. Bristol and his company, PPM, were in violation of that provision of the lease. In response to Filing #22, and prior to the execution of the lease at Filing #21, Mr. Bristol denied that he was in violation of the restrictive term of the lease and informed Mr. Stern that the only vehicle repairs that were being performed at Sports & Imports were those necessary to prepare the used cars for sale and those necessary to keep the rental cars properly operating. With that assurance, Mr. Stern, on behalf of his company, executed the new lease and paid the rental payments through October of 2002.

In October of 2002, Mr. Stern employed the services of an attorney to notify Mr. Bristol in writing that it was Mr. Stern's position that from and after the execution of the lease, Sports & Imports continued to provide repair services to customers who were not purchasers of the used vehicles and were not renters of such vehicles. In other words, Mr. Stern believed that repairs on third-party customer vehicles were being performed on the Sports & Imports premises for monetary consideration. The attorney's letter, Filing #23, informed Mr. Bristol that unless such activities immediately ceased, Maple, Inc., would immediately terminate the lease.

By Filing #24, a letter dated November 6, 2002, from counsel for Maple, Inc., the lease was terminated based upon the alleged breach by the landlord.

As mentioned above, PPM sued Maple, Inc., and Brown in Douglas County District Court and requested damages for the remaining lease amounts, less mitigation, plus repairs and utilities, in the approximate amount of $75,000.

At trial, Mr. Bristol, as a representative of PPM and a representative of Bristol, Inc., d/b/a Sports & Imports, admitted that occasionally repair work was performed for money, for individuals who were not purchasers of used cars from the business nor were renting from the business. He was adamant that the restrictive use paragraph could not prohibit Bristol, Inc., d/b/a Sports & Imports, from repairing its own vehicles or from repairing vehicles of persons who had purchased used cars on the installment payment plan when they needed repairs. His position was that if he was unable to repair purchased vehicles, the purchasers would quit paying and it would be harmful to his business. He also insisted that he had been doing such work on purchasers' cars during the time the original lease was in effect, during the time the renewal lease was in effect, and continuing during the time Filing #21 was in effect. He claimed that Mr. Stern was well aware through all those years that repairs were being done on used cars to prepare them for sale and on the rental cars.

Mr. Bristol, both in depositions and in live testimony at trial, was unable to quantify, either by number of vehicles or by dollar amount, how much business was done with third-party customers

that were not purchasers of the used cars. The business records of Sports & Imports show gross revenue from repairs on an annual basis ran from $40,000 to $12,000. Mr. Bristol could not break out the amount attributable to third-party customer work.

It is Mr. Bristol's position on behalf of his companies that the type of repair service he provided, including for third-party customers, did not violate the lease. He bases such an opinion on the fact that the restrictive language prohibits "an auto service and repair business similar to that conducted on the Premises by the Tenant." He says Sports & Imports is a used car and rental business, not an auto service and repair business similar to that conducted by Maple, Inc.

The deposition of Michael Heilig, Filing #86, was admitted into evidence. Mr. Heilig has for many years operated his own business in the same facility that Mr. Bristol operates Sports & Imports. Mr. Heilig's business is to sell used cars. He buys them, brings them to the facility, does whatever repairs are necessary, and puts them on the lot where Sports & Imports' used vehicles are located. He is not an employee of Bristol, Inc., but helps out with repairs to Sports & Imports cars when needed. He is permitted to operate his business on the premises without paying rent because of his occasional mechanic service and sales service to Sports & Imports. He has a sales license for used vehicles and a dealer license for used vehicles.

Mr. Heilig admitted that on occasion he has performed vehicle repair services, for money, in the facility of Sports & Imports, on vehicles that were not his own and were not vehicles he had sold. He insisted that there were very few vehicles that he worked on for pay, but was unable to present any records concerning the number of vehicles or the amount of money that he had received for the repair of the vehicles.

Mr. Stern, president of Maple, Inc., testified that the reason he wanted the language in the lease that is now in question was because he wanted no other business on the adjoining premises that would compete in any way with his car repair business. He testified it was eventually obvious that third-party customers were bringing vehicles to the facility operated as Sports & Imports for repairs for money. Prior to executing the lease, Filing #21, he had insisted that such work cease, and had been assured that there was none of that work happening. His position is that any vehicles being repaired for money on the facility operated by Sports & Imports were in competition with his own business and potentially harmful to his own business.

I find as a fact that the restrictive language in the lease was specifically negotiated and that Mr. Stern executed the lease on behalf of his company after receiving full assurances that no third-party repairs for money occurred or would occur on the facility operated by Sports & Imports. I further find as a fact that vehicles were repaired for money on that facility, both by Sports & Imports and by Mr. Heilig. I further find as a fact that Maple, Inc., was protected by the restrictive language from any third-party vehicle repair service for money being performed in the "developed area." The restriction is not limited to a business that does 100% repair work, 50% repair work, 25% repair work or any other percentage. The restriction prohibits vehicle repair work for money because that is what Maple, Inc., does.

Based upon the admissions by Mr. Heilig and Mr. Bristol concerning third-party vehicle repair work for money, and the failure of the business records of either Mr. Bristol's company or Mr. Heilig to show that the financial impact was extremely de minimis, I find as a fact that the landlord, PPM, breached the restrictive use paragraph and that the breach was material, giving rise to a right to terminate the lease by Maple, Inc.

Conclusions of Law

To recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty. Solar Motors, Inc. v. First Nat'l Bank of Chadron, 545 N.W.2d 714, 721 (Neb. 1996). A material breach will excuse the non-breaching party from performance. Gary's Impl., Inc. v. Bridgeport Tractor Parts, Inc., 702 N.W.2d 355, 370 (Neb. 2005).

Accordingly, judgment will be entered in favor of Brown & Associates, Ltd., and against Positive Property Management, LLC. No monetary damages are awarded.

DATED:    March 10, 2010

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    *Charles Forrest
    Michael Peterson
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.